# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DARIN LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-0884-CV-W-NKL |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

Before the Court is Plaintiff Darin Lewis's Social Security Complaint [Doc. # 5]. For the following reasons, the Court reverses and remands the decision of the Administrative Law Judge ("ALJ").

## I. Background[1]

This case involves a claim for Disability Insurance benefits under Title II of the Social Security Act., 42 U.S.C., §§ 410 et seq.; 42 U.S.C. §§ 1382, et seq. Plaintiff Lewis contests the Defendant's finding that he is not disabled.

### A. Medical Evidence

On March 11, 2008, Plaintiff Lewis reported to Amr Edrees, M.D., that he was diagnosed with rheumatoid arthritis around January 2007. Plaintiff had significant

---

[1] The facts and arguments presented in the parties' briefs are duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

improvement in his symptoms for 10 months – from approximately January 2007 to October 2007 – with medication. He also reported that from October 2007 to February 2008, he had increased pain and joint stiffness after his insurance ceased and he discontinued his medication. With assistance from the ENcourage Foundation, Plaintiff restarted his medication in February 2008. Dr. Edrees observed that Plaintiff felt better after restarting his medication, and had intermittent joint pain. Plaintiff could make complete fists with both hands, and had minimal tenderness and swelling in his right hand and left ankle. He had tenderness and limited range of motion in his left elbow. Dr. Edrees instructed Plaintiff to continue his arthritis medication and prescribed pain medication.

In April 2008, Dr. Edrees opined that Plaintiff Lewis's rheumatoid arthritis was well controlled with medication. Plaintiff had tenderness in his ankles and tenderness with limited range of motion in his elbows, but could make a complete fist with both hands. Plaintiff reported that his symptoms had continually improved during the previous two months. Although Plaintiff's rheumatoid arthritis was under control with medication, he had not received his medication during the previous month due to lack of insurance. Plaintiff was working to obtain medication assistance from the ENcourage Foundation.

Later that month, Dr. Bamberger opined that Plaintiff Lewis had normal range of motion and no tenderness or inflammation in his left arm or hand. Plaintiff had reduced grip strength in his left hand. Dr. Bamberger prescribed over-the-counter pain medication and steroid medication for flare ups.

In September 2008, Plaintiff Lewis reported to Dr. Edrees that he had restarted his rheumatoid arthritis medication and that his symptoms had significantly improved. Plaintiff had mild tenderness in his left ankle, but had no tenderness or swelling in his hands and could make a complete fist with both hands.

In October 2008, Plaintiff Lewis told Dr. Bamberger that he had no complaints regarding his rheumatoid arthritis, and that his medication relieved his symptoms. Plaintiff walked normally, and had no joint pain, redness, or stiffness. Dr. Bamberger opined that Plaintiff's arthritis was stable.

On February 3, 2009, Plaintiff Lewis reported to Dr. Edrees that he had a brief period of swelling in his left hand and foot after he forgot to take his medication. Dr. Edrees observed no tenderness or swelling in Plaintiff's hands, ankles, or feet, and observed that he could make a fist with both hands.

In March 2009, Plaintiff Lewis reported numbness in his right palm to Dr. Bamberger.

In May 2009, Dr. Edrees observed that Plaintiff's symptoms had improved with medication. Plaintiff reported that he had one week of pain and swelling in his left foot two weeks prior to the visit, but those symptoms had improved with medication. Plaintiff had some tenderness in his left foot, but could make fists and had no tenderness or swelling in his hands, ankles, or right foot.

On November 19, 2009, Dr. Bamberger opined that Plaintiff Lewis had good muscle strength and range of motion in his arms and legs, that he appeared comfortable, and that he could walk without assistance.

The next week, Plaintiff Lewis reported to Dr. Edrees that he had pain and swelling in his left foot that began three weeks prior to the visit. Plaintiff had tenderness and swelling in his left foot, but had no tenderness or swelling in his hands and ankles, and could make complete fists with both hands.

In January 2010, x-rays of Plaintiff's feet showed degenerative arthritis.

In February 2010, Plaintiff Lewis had surgery to repair a broken ankle after he slipped on ice. Two days later, a physical therapist cleared Plaintiff to return home with a non-weightbearing restriction for his left leg. Plaintiff's physicians prescribed pain medication.

**B.    Administrative Proceedings**

On July 17, 2008, at age 46, Lewis filed an application for a period of Disability Insurance benefits, alleging an onset date of disability of June 1, 2007. His application was denied initially and upon reconsideration. He then filed a Request for Hearing before an ALJ and this request was granted.

The hearing before the ALJ took place on March 4, 2010. Plaintiff Lewis testified that he last worked as a janitor and had completed the 11th grade. He stated that he had

difficulty with pain and swelling in his right hand and left foot and hand on five to six days of the month with his pain level at a 10. He continued:

> The foot is worse[ ] than the hand when the foot swells up, you know, I can pretty much get away with the hand, but once the foot swells up then, you know, I can't walk at all. I'm basically bedridden.

[Tr. 27.] Lewis testified that his foot would swell to the point that he was bedridden approximately eight to ten days a month.

On March 23, 2010, the ALJ issued an Unfavorable Decision on Plaintiff Lewis's claim. The ALJ found that Plaintiff Lewis had the severe impairment of rheumatoid arthritis. However, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b). The ALJ then found that Plaintiff Lewis was unable to perform any past relevant work. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Lewis could perform. Thus, the ALJ concluded that Plaintiff Lewis was not disabled.

## II. Discussion

### A. Standard of Review

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*,

480 F.3d 885, 886 (8th Cir. 2007) (citation omitted). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

B. **Whether the ALJ's Residual Functional Capacity Assessment was Based on Medical Evidence**

On this appeal, Plaintiff Lewis argues that the ALJ gave improper weight to the opinion of Melissa Hunter, a lay person. The ALJ wrote:

> As for the opinion evidence, a physical RFC done August 18, 2008, by medical consultant Melissa Hunter found the claimant able to occasionally lift 20 pound and frequently 10 pounds; stand/walk for 6 of 8 hours and sit for 6 of 8 hours; and never climbing ladders, ropes, or scaffolds; and limited in fingering. Hunter opined that the claimant could perform as outlined above "likely even without his rheumatoid arthritis medications and definitely with them" (Exhibit 3F). This opinion is given great weight.
> . . .
> Accordingly, based on the substantial weight of the objective medical evidence, the claimant's course of treatment, his level of daily activities, his work history and the opinion of Melissa Hunter, which has been given significant weight for the reasons cited above, the undersigned finds that the claimant retains the residual functional capacity for the range identified above.

[Tr. 13-14.]

A claimant's RFC is a medical question. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (citing *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). "Where the medical

evidence is equally balanced . . . the ALJ resolves the conflict." *Bently v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). To assess medical evidence, the Eighth Circuit has explained:

> Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources*. It then divides *other sources* into two groups: *medical sources* and *non-medical sources*. 20 C.F.R. §§ 404.1502, 416.902 (2007).
>
> *Acceptable medical sources* include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. §§ 404.1513(a), 416.913(a) (2007). According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, *id.*, (2) only acceptable medical sources can provide medical opinions, 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2007), and (3) only acceptable medical sources can be considered treating sources, 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2007).

*Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007). Where an ALJ has relied on the opinion of a lay person to establish a claimant's RFC, the Eighth Circuit has written:

> There is certainly no substantial evidence that the Residual Functional Capacity Assessment in the record was the opinion of a physician. . . . The Commissioner argues that the error was harmless, but in light of the presence in the record of a more restrictive opinion from [the claimant's] treating physician, we cannot say that the ALJ would inevitably have reached the same result if he had understood that the Residual Functional Capacity Assessment had not been completed by a physician or other qualified medical consultant.

*Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007).

Here, Melissa Hunter affixed her name in the signature block reserved for "Medical Consultant." [Tr. 246.] Thus, it is easy to understand why the ALJ assumed he was reviewing the report of a medical professional.

> The court is troubled by the Commissioner's use of RFC Assessment forms completed by "single decision makers" who are not "acceptable medical sources" within the meaning of the regulations but who "sign" the forms by placing their name (without title such as Mr., Ms., M.D., or Ph.D.) in the space designated "Medical Consultant's Signature" and without explanation that they are not an "acceptable medical source," a medical consultant, or any kind of medical professional. This practice leads to errors where ALJ's accept or rely upon the SDM's RFC assessment as a medical opinion.

*Kempel v. Astrue*, No. 08-4130-JAR, 2010 WL 58910 *1, *7 (D. Kan. Jan. 4, 2010) (citations omitted).

Defendant concedes that Plaintiff is correct that the disability examiner is not a physician and that her RFC determination is not entitled to any weight. The ALJ gave her opinion "great weight." [Tr. 13.] Nevertheless, Defendant argues that the error was harmless.

The Court cannot say that the ALJ would inevitably have reached the same result if he had understood that Melissa Hunter was a lay person. Hunter's opinion was the only medical opinion mentioned by the ALJ:

> Accordingly, based on the substantial weight of the objective medical evidence, the claimant's course of treatment, his level of daily activities, his work history and the opinion of Melissa Hunter, which has been given significant weight for the reasons cited above, the undersigned finds that the claimant retains the residual functional capacity for the range identified above.

[Tr. 14.] This was legal error and the case must be remanded for a proper RFC assessment.

### III. Conclusion

Accordingly, it is hereby ORDERED that the decision of the Commissioner is REVERSED and the matter is REMANDED for a proper RFC to be determined upon reconsideration of the relevant evidence, consistent with this Court's order.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: July 13, 2011  
Jefferson City, Missouri